In the
United States Court of Appeals
For the Seventh Circuit

No. 00-4267

In re Brand Name Prescription Drugs
Antitrust Litigation.


Appeal of:  William Mack Price, et al.



Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 94 C 897, MDL No. 997--Charles P. Kocoras, Judge.


Submitted March 29, 2001--Decided April 23, 2001



 Before Bauer, Posner, and Easterbrook, Circuit Judges.

 Posner, Circuit Judge.  This appeal brings before
us a recurring problem in the administration of
the diversity jurisdiction of the federal courts.
A plaintiff brings a suit in a state court. The
defendant removes it to federal court. To keep
the case from being remanded to the state court,
the defendant must show not only that the parties
are of diverse citizenship, ordinarily a
straightforward thing to show, but also that the
amount in controversy exceeds the jurisdictional
minimum, which is now $75,000 though it was only
$50,000 when the suit was brought. 28 U.S.C. sec.
1332. Since the plaintiff will not have had to
allege an amount in controversy when he filed his
suit in state court (or, if there is a minimum
amount in controversy for suing in that court,
invariably it will be substantially lower than
the federal minimum), and since his stakes in the
litigation are likely to be better known to him
than to the defendant, there is a risk that the
plaintiff will not contest jurisdiction upon
removal, but later, should the case turn against
him on the merits, will claim that the federal
minimum amount in controversy has not in fact
been met. In Shaw v. Dow Brands, Inc., 994 F.2d
364 (7th Cir. 1993), on which the defendants
heavily rely, we suggested that this kind of
sandbagging tactic could be defeated by deeming
the plaintiff's failure to contest removal on the
ground that the stakes were not great enough to
satisfy the jurisdictional minimum a forfeiture
of any subsequent challenge to jurisdiction. The
plaintiffs in this case ask us to reexamine Shaw
in light of the bedrock, the unquestioned,

principle, enforced by us after Shaw in a case that like the present one involved the removal of an Alabama antitrust suit to federal district court, In re Brand Name Prescription Drugs Antitrust Litigation, 123 F.3d 599, 607-10 (7th Cir. 1997) (we'll cite this as "Huggins," that being the name of the lead plaintiff in that Alabama suit), that objections to subject-matter jurisdiction cannot be waived, and are not forfeited, until a case has gone through to final judgment after exhaustion of all appellate remedies.

The present case began as a class action filed in a state court in Alabama. A class of Alabama consumers sought damages under the state's antitrust law against manufacturers of brand-name prescription drugs, charging that they had violated that law by colluding to raise the prices of their drugs. The class members, though they had not purchased the drugs directly from the defendants, but rather from retailers, claimed that the retail prices which they had paid were inflated by the price-fixing conspiracy, because the manufacturers' increased prices had been passed in whole or part down the chain of distribution to the ultimate consumers. If brought under federal antitrust law, such a claim would be barred by Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977), which disallows suits by indirect purchasers; but Alabama permits such suits under its antitrust law.

Although the complaint that the plaintiffs filed in state court did not specify the amount of damages sought, or otherwise suggest an amount in controversy, the defendants removed the case to a federal district court in Alabama, which in turn transferred it to a federal district court in Illinois. Seven months later, the plaintiffs moved to remand the case to the Alabama state court on the ground that the amount in controversy was in fact less than $50,000. The district court refused to do so, and proceeded to enter judgment on the merits for the defendants on the ground that Alabama antitrust law does not regulate interstate commerce. (The drugs bought by the plaintiffs had been shipped across state lines.) The reach of that law had been unsettled when we decided Huggins, but the defendants persuaded the district judge that it had since been resolved in their favor by Abbott Laboratories v. Durrett, 746 So. 2d 316 (Ala. 1999).

The defendants argue that the plaintiffs' seven-month delay in challenging federal jurisdiction operates not as a waiver or forfeiture of their right to make such a challenge--such an argument would be frivolous, see, e.g., Walters v. Edgar,

163 F.3d 430, 433 (7th Cir. 1998), and cases cited there--but as a factual admission, an admission that, as a matter of fact, the plaintiffs are seeking more than $50,000 in damages. And it is true that factual admissions that establish federal jurisdiction have the same status as other factual admissions unless there is reason to believe that the parties are colluding to conceal the absence of jurisdiction. Workman v. United Parcel Service, Inc., 234 F.3d 998, 999-1000 (7th Cir. 2000); Prizevoits v. Indiana Bell Tel. Co., 76 F.3d 132, 134-35 (7th Cir. 1996). Were that not the rule, there would have to be an evidentiary hearing in every federal case to determine whether the federal court had jurisdiction. But the plaintiffs never admitted anything concerning the size of the stakes in this litigation. It may have been reprehensible of them to delay as long as they did to raise a jurisdictional objection, and it may even (though this we need not decide either) have been a sanctionable tactic, but assuming federal jurisdiction where none exists is not a permissible sanction for anything. Napoleon at his coronation took the imperial crown out of the hands of the Pope and crowned himself. Federal judges do not have a similar prerogative. A court that does not have jurisdiction cannot assume it, however worthy the cause.

 Had the plaintiffs, before the removal of the case to federal court, stipulated that they were seeking less than $50,000, the court would have been required to remand the case to state court without further inquiry. It would have been plain that the case was not within federal jurisdiction. But the converse--that jurisdiction can be assumed without further inquiry if the plaintiffs stipulate that they are seeking more, or don't stipulate at all--does not follow. Jurisdiction cannot be conferred by stipulation or silence. For that matter, it cannot (with immaterial exceptions) be destroyed by stipulation after jurisdiction attaches. If the plaintiffs' original claim was worth more than $50,000, removal was proper, the case was within federal jurisdiction, and the plaintiffs could not defeat that jurisdiction by scaling back their claim.

 Shaw, though it contains language that sorts ill with the principles that we have been expounding (language we now disapprove), is distinguishable. It was a personal injury suit in which the plaintiff was suing for permanent damage to his lungs. It is difficult to see how, if he succeeded in proving his claim (and there was no suggestion that it was spurious), he would be entitled to less than $50,000 (the then jurisdictional minimum in federal diversity

cases, as when the present case was filed). So improbable was that hypothesis that we were not required, merely on the basis of the plaintiff's belated and unsubstantiated assertion, to remand for a factual inquiry. This case is quite different. We must bear in mind that in a class action at least one plaintiff must satisfy the minimum amount in controversy all by himself; that the plaintiffs are purchasers of drugs for their own use; and that the damage period is only two years. One of the named plaintiffs may have incurred $50,000 in damages from being overcharged for drugs over a two-year period, if only because the Alabama antitrust statute affixes a $500 penalty to every violation, as we explained in Huggins. So even if the overcharge was trivial, someone who over a two-year period made 100 separate purchases of drugs the price of which had been inflated by the defendants' price fixing would satisfy the jurisdictional minimum. That is possible but of course not certain-- indeed sufficiently uncertain, just as in Huggins, to require an evidentiary hearing before the motion to remand could be denied. The judgment of the district court is therefore vacated and the case remanded to that court for the hearing.

Vacated and Remanded.