Diane **BAKER**, et al., Plaintiffs,

v.

**JOHNSON & JOHNSON,**
et al., Defendants.

Civil No. 10–283–GPM.

United States District Court,
S.D. Illinois.

April 21, 2010.

Opinion Granting Motion for
Remand May 26, 2010.

---

Christopher F. Cueto, Law Office of Christophert Cueto Ltd., Belleville, IL, for Plaintiffs.

Stephen G. Strauss, Bryan Cave, St. Louis, MO, for Defendants.

### MEMORANDUM AND ORDER

MURPHY, District Judge:

#### I. INTRODUCTION

This case, which comes to the Court via removal from state court, is before the

Court sua sponte on the issue of federal subject matter jurisdiction. *See Johnson v. Wattenbarger,* 361 F.3d 991, 992 (7th Cir.2004) (a district court's "first duty in every suit" is "to determine the existence of subject-matter jurisdiction"); *Asperger v. Shop Vac Corp.,* 524 F.Supp.2d 1088, 1091 (S.D.Ill.2007) (quoting *Hay v. Indiana State Bd. of Tax Comm'rs,* 312 F.3d 876, 879 (7th Cir.2002)) (reviewing sua sponte the allegations of federal subject matter jurisdiction contained in a notice of removal because "[j]urisdiction is the ... power to declare law, ... and without it the federal courts cannot proceed. Accordingly, not only may the federal courts police subject matter jurisdiction *sua sponte,* they must.") (citation omitted). *Cf. Wisconsin Knife Works v. National Metal Crafters,* 781 F.2d 1280, 1282 (7th Cir.1986) ("The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged."). In this case some sixty Plaintiffs assert claims for personal injuries allegedly caused by Levaquin, a prescription medication manufactured and distributed by Defendants Johnson & Johnson ("J & J"), Ortho–McNeil Pharmaceutical, Inc. ("Ortho–McNeil"), Johnson & Johnson Pharmaceutical Research & Development, LLC ("J &

J Pharmaceutical"), and Janssen Pharmaceutica, Inc. ("Janssen").[1] Plaintiffs' complaint asserts claims for strict products liability, breach of express and implied warranty, negligence, fraud, negligent misrepresentation, consumer fraud, infliction of emotional distress (both intentional and negligent), wrongful death, and medical monitoring, This case was filed originally in the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois, on February 26, 2010, and has been removed to this Court within thirty days of service of the complaint by J & J, Ortho–McNeil, J & J Pharmaceutical, and Janssen. Federal subject matter jurisdiction is asserted on the grounds that this is an action arising under federal law within the meaning of 28 U.S.C. § 1331 and on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332. For the reasons that follow, the Court orders the parties to this case to show cause why the case should not be remanded to state court for lack of federal subject matter jurisdiction.

## II. *ANALYSIS*

### A. Federal Question Jurisdiction

◼ The Court turns first to the issue of whether this case is within so-called "federal question" jurisdiction. In general, of course, "[t]he district courts shall have original jurisdiction of all civil actions

---

1. In addition to Diane Baker, Plaintiffs in this case are: Marcia Barber, individually and on behalf of the Estate of John K. Barber; Carolyn Boddy; Bradley Brandt; Vivian Brown; Marcherie Cameron; Addie Collins; Evelyn Corman; Claude Dixon; Markease Doe; Angela Drinkard; Molly Dunphy; Otha Fort, III; Nina Gray; Carl Habis; Tonya Halberstadt; Patricia Hallman; Bobbi Hyatt; Leandrea Johnson; Kenny Jones; Mary Jones; Jessica Kent; Mark Landers; Steve Lawson; Heather Lee; Julie Lindsay; Linda Sue Mahn; Christina Martinez; Paul Matheny; Virginia McLaren, individually and on behalf of the estate of John Johnson; Gustoria Meadows; Aamir Memon; Bernice Merry; Richard Mesey; Paulette Miller; Lori Moss;

Inez Mouton; Joey Murphy; Richard L. Nelson, Sr., individually and on behalf of the estate of Elizabeth Nelson; Louis Prestwood; Gary Roberts, Sr.; Chester Schroeder; Dawn Schroeder; Jeremiah Shelton; Latasha Shelton; Edricca Snow, individually and on behalf of the estate of Eddie May Jones; Patricia Spanks; Karl Staten; Thomas Straight, Jr.; Diane Terry, individually and on behalf of the estate of Naomi Tucker; Lena Thomas; Richard Tucker; Lillie Turner; Gary Watkins, individually and on behalf of the estate of Martha Watkins; Margaret Welborn; Steven Westbrook; Marsha Williams; Patricia Williams; Angela Wilson; and Sharon Wilson.

arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Defendants contend that because the complaint contains a count alleging negligence per se on the basis of an alleged violation by Defendants of 21 C.F.R. § 201.128, the negligence per se count constitutes a separate and independent claim arising under federal law within the meaning of 28 U.S.C. § 1441(c). Defendants allege further that the negligence per se claim presents a substantial federal question for purposes of federal subject matter jurisdiction. As a rule, "[a] suit arises under the law that creates the cause of action." *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916). However, the "substantial federal question" doctrine provides generally that "[e]ven though state law creates [a plaintiff's] cause of action, its case still might 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 13, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). The doctrine normally is traced to *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921), in which a plaintiff brought a complaint for injunctive relief in federal court, alleging that a defendant's actions were illegal because they were taken pursuant to an unconstitutional federal statute. *See id.* at 195–99, 41 S.Ct. 243. The Court held, "[a] case in law or equity consists of the right of the one party, as well as of the other, and may truly be said to arise under the Constitution or a law of the United States, whenever its correct decision depends upon the construction of either, ... and again, when ... the title or right set up by the party, may be defeated by one construction of the Constitution or law of the United States, and sustained by the opposite construction." *Id.* at 199, 41 S.Ct. 243.

The substantial federal question doctrine has proven somewhat elusive and has even been pronounced dead on occasion by the lower federal courts. *See, e.g., International Armor & Limousine Co. v. Moloney Coachbuilders, Inc.*, 272 F.3d 912, 915 (7th Cir.2001); *Seinfeld v. Austen*, 39 F.3d 761, 764 (7th Cir.1994); *Dudley v. Putnam Int'l Equity Fund*, Civil Nos. 03–852–GPM, 03–853–GPM, 2004 WL 5239426, at *2 (S.D.Ill. Jan. 27, 2004). However, in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005), the Court both affirmed the continuing vitality of the doctrine and furnished important guidance as to its application. In *Grable* the Court addressed what it termed "another longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction, ... having recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Id.* at 312, 125 S.Ct. 2363. The *Grable* Court set out the test for determining whether a "substantial question of federal law" sufficient to warrant removal exists as follows: "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314, 125 S.Ct. 2363. In so doing, the Court emphasized that merely alleging a "federal issue" does not operate "as a password opening federal courts to any state action embracing a point of federal law." *Id.* Moreover, since *Grable* was decided the Court has clarified that "*Grable* emphasized that it takes more than a fed-

eral element 'to open the 'arising under' door,'" and few cases can be "squeezed into the slim category *Grable* exemplifies." *Empire Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677, 701, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006) (quoting *Grable,* 545 U.S. at 313, 125 S.Ct. 2363).

 In this instance, the meaning of a federal regulation is not in dispute. *See Bennett v. Southwest Airlines Co.,* 484 F.3d 907, 910 (7th Cir.2007) (noting that "a fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of a federal law" does not constitute a substantial, disputed question of federal law within the meaning of *Grable* ). Also, it is apparent to the Court that this is not the type of state-law case that will "rare[ly]" present a question of federal law and thus have "only a microscopic effect on the federal-state division of labor." *Grable,* 545 U.S. at 315, 125 S.Ct. 2363. In the Court's experience, state-law claims of which a violation of federal law is an element are routine in cases alleging personal injuries caused by prescription medication, and to treat such cases as arising under federal law would have the effect of shifting virtually every such case from state court to federal court, a massive disruption of the proper balance of power as between state courts and federal courts. As the *Grable* Court observed,

> [E]ven when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto. For the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of [28 U.S.C.] § 1331 .... Because arising-under jurisdiction to hear a state-law claim always

raises the possibility of upsetting the state-federal line drawn (or at least assumed) by Congress, the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction.

*Id.* at 313–14, 125 S.Ct. 2363. Moreover, the *Grable* Court recognized that "[t]he violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings." *Id.* at 318, 125 S.Ct. 2363. In sum, it is not the case that a finding of federal subject matter jurisdiction in this instance will have only a de minimis effect on state-court jurisdiction. Accordingly, the Court does not believe that it has jurisdiction in this instance pursuant to 28 U.S.C. § 1331.

## B. Diversity Jurisdiction

 The Court turns to the second basis for federal subject matter jurisdiction asserted by Defendants, diversity of citizenship. In general, federal courts have original subject matter jurisdiction in diversity in cases in which there is complete diversity of citizenship among the parties to an action and in which an amount in excess of $75,000, exclusive of interest and costs, is in controversy. *See* 28 U.S.C. § 1332(a)(1); *LM Ins. Corp. v. Spaulding Enters. Inc.,* 533 F.3d 542, 547 (7th Cir.2008); *Glisson v. Matrixx Initiatives, Inc.,* Civil No. 10–76–GPM, 2010 WL 685894, at *1 (S.D.Ill. Feb. 22, 2010). Complete diversity of citizenship means, of course, that "none of the parties on either side of the litigation may be a citizen of the state of which a party on the other side is a citizen." *Howell v. Tribune Entm't Co.,* 106 F.3d 215, 217 (7th Cir.1997). *See also Krueger v. Cartwright,* 996 F.2d 928, 931 (7th Cir.1993) ("Under the rule of complete diversity, if there are residents of the same state on both sides of a lawsuit, the

suit cannot be maintained under the diversity jurisdiction even when there is also a nonresident party."). For purposes of diversity jurisdiction, a person who sues as the legal representative of another has the state citizenship of the person on whose behalf he or she sues. *See* 28 U.S.C. § 1332(c)(2); *Gustafson v. zumBrunnen,* 546 F.3d 398, 400–03 (7th Cir.2008); *Adams v. Purves,* Civil No. 10–55–GPM, 2010 WL 378422, at *2 (S.D.Ill. Jan. 27, 2010). The citizenship of a corporation for diversity purposes is determined by both the state where the corporation is incorporated and the state where the corporation maintains its principal place of business. *See* 28 U.S.C. § 1332(c)(1); *Nuclear Eng'g Co. v. Scott,* 660 F.2d 241, 250 (7th Cir. 1981); *Lyerla v. Amco Ins. Co.,* 461 F.Supp.2d 834, 836 (S.D.Ill.2006). *See also Frakes v. B & J Food Serv. Equip. of Mo., Inc.,* Civil No. 10–247–GPM, 2010 WL 1418567, at *2 (S.D.Ill. Apr. 7, 2010) (citing *Hertz Corp. v. Friend,* —— U.S. ——, 130 S.Ct. 1181, 1192–95, —— L.Ed.2d —— (2010)) (holding that the location of a corporation's principal place of business for diversity purposes is the state where the corporation has its headquarters or nerve center). The citizenship of a limited liability company ("LLC") for diversity purposes is the citizenship of each of the LLC's members. *See Wise v. Wachovia Sec., LLC,* 450 F.3d 265, 267 (7th Cir.2006); *Cosgrove v. Bartolotta,* 150 F.3d 729, 731 (7th Cir.1998); *LaRoe v. Cassens & Sons, Inc.,* 472 F.Supp.2d 1039, 1040 (S.D.Ill. 2006).

It appears from the allegations of Plaintiffs' complaint, which assert that Plaintiffs have suffered severe and permanent personal injuries as a result of taking Levaquin, that an amount in excess of $75,000, exclusive of interest and costs, is in controversy. *See Andrews v. E.I. Du Pont De Nemours & Co.,* 447 F.3d 510, 514–15 (7th Cir.2006); *Leggitt v. Wal–Mart Stores,*

*Inc.,* Civil No. 10–245–GPM, 2010 WL 1416833, at *2 (S.D.Ill. Apr. 5, 2010). However, diversity of citizenship is not complete. First, several Plaintiffs are suing as legal representatives of others, including: Marcia Barber, who sues on behalf of the estate of John Barber; Virginia McLaren, who sues on behalf of the estate of John Johnson; Richard Nelson, who sues on behalf of the estate of Elizabeth Nelson; Edricca Snow, who sues on behalf of the estate of Eddie Jones; Diane Terry, who sues on behalf of the estate of Naomi Tucker; and Gary Watkins, who sues on behalf of the estate of Martha Watkins. It appears from the record that Marcia Barber is a citizen of Utah, Virginia McLaren is a citizen of Texas, Richard Nelson and Gary Watkins are citizens of Ohio, Edricca Snow is a citizen of Michigan, and Diane Terry is a citizen of New Jersey. However, the record is not clear as to the state citizenship of the persons on whose behalf those Plaintiffs are suing, which, as noted, is the jurisdictionally-relevant citizenship. Second, Defendants' notice of removal alleges that J & J Pharmaceutical, an LLC, is incorporated under New Jersey law and has its principal place of business in New Jersey. As noted, the citizenship of an LLC is determined by the citizenship of the LLC's member or members, and here Defendants entirely fail to allege the identity of any members of J & J Pharmaceutical and their citizenship for diversity purposes. Finally, Plaintiffs Angela Drinkard and Patricia Williams are citizens of New Jersey, as are J & J and Ortho–McNeil–Janssen Pharmaceuticals, Inc. ("Ortho–McNeil–Janssen") (it appears that Plaintiffs have incorrectly sued Ortho–McNeil and Janssen as separate entities when in fact they are the same entity). In the notice of removal in this case J & J is alleged to be a corporation incorporated under New Jersey law with its principal

place of business in New Jersey, and thus is a citizen of New Jersey for diversity purposes. Ortho–McNeil–Janssen is alleged to be a corporation incorporated under Delaware law with its principal place of business in New Jersey, and thus is a citizen of Delaware and New Jersey for diversity purposes.[2]

■■■■■ Defendants contend that the Court can exercise jurisdiction in diversity pursuant to the doctrine of fraudulent joinder to defeat diversity jurisdiction. In evaluating diversity of citizenship, a court must disregard a defendant that has been fraudulently joined. *See Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir.1999); *LaRoe v. Cassens & Sons, Inc.*, 472 F.Supp.2d 1041, 1045 (S.D.Ill.2006). In the Seventh Circuit a defendant is fraudulently joined when "there is no possibility that a plaintiff can state a cause of action against [the] nondiverse defendant[ ] in state court, or where there has been outright fraud in plaintiff's pleading of jurisdictional facts." *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir.1993). *See also Hoosier Energy Rural Elec. Coop., Inc. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310, 1315 (7th Cir.1994); *Smith v. Merck & Co.*, 472 F.Supp.2d 1096, 1098 (S.D.Ill.2007). A defendant seeking

removal based on alleged fraudulent joinder has the "heavy burden" of proving that, after the court resolves all issues of law and fact in the plaintiff's favor, there is no possibility that the plaintiff can establish a cause of action against the diversity-defeating defendant in a state court. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir.1992); *Bankcroft v. Bayer Corp.*, Civil No. 09–787–GPM, 2009 WL 3156706, at *2 (S.D.Ill. Sept. 29, 2009). The standard under which a claim of fraudulent joinder must be evaluated, the United States Court of Appeals for the Seventh Circuit suggested recently, may be "even more favorable to the plaintiff than the standard that applies to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 764 (7th Cir. 2009). *See also Thompson v. Cottrell, Inc.*, Civil No. 10–124–GPM, 2010 WL 850183, at *2 (S.D.Ill. Mar. 8, 2010).

■■■■ Here Defendants allege neither fraud in Plaintiffs' pleading of jurisdictional facts nor that Plaintiffs cannot establish a cause of action under state law against the diversity-defeating Defendants, J & J and Ortho–McNeil–Janssen. Instead, Defendants contend that the claims of Angela Drinkard and Patricia Williams have been

---

**2.** The citizenship of the other parties to this case is as follows: Patricia Hallman, Steve Lawson, and Lillie Turner are citizens of Alabama; Otha Fort and Julie Lindsay are citizens of Arkansas; Kenny Jones, Christina Martinez, and Inez Mouton are citizens of California; Vivian Brown, Markease Doe, Gustoria Meadows, Bernice Merry, and Louis Prestwood are citizens of Florida; Marcherie Cameron, Leandrea Johnson, Karl Staten, and Margaret Welborn are citizens of Georgia; Diane Baker, Jessica Kent, Heather Lee, Chester Schroeder, and Angela Wilson are citizens of Illinois; Thomas Straight is a citizen of Indiana; Paulette Miller is a citizen of Iowa; Mary Jones is a citizen of Kansas; Joey Murphy is a citizen of Kentucky; Claude Dixon is a citizen of Louisiana; Molly Dunphy is a citizen of Maine; Patricia Spanks is a citizen of Massachusetts; Tonya Halberstadt and Gary Roberts are citizens of Michigan; Latasha Shelton and Sharon Wilson are citizens of Mississippi; Richard Mesey, Dawn Schroeder, and Steven Westbrook are citizens of Missouri; Evelyn Corman and Lori Moss are citizens of Nebraska; Marsha Williams is a citizen of Nevada; Lena Thomas is a citizen of North Carolina; Carolyn Boddy is a citizen of Ohio; Jeremiah Shelton is a citizen of Oklahoma; Carl Habis is a citizen of Oregon; Richard Tucker is a citizen of South Carolina; Addie Collins, Bobbi Hyatt, Mark Landers, Linda Sue Mahn, and Aamir Memon are citizens of Texas; Nina Gray is a citizen of Utah; and Bradley Brandt is a citizen of Wisconsin.

fraudulently joined with those of the other Plaintiffs in this case to defeat diversity jurisdiction. This is, of course, the doctrine of so-called "fraudulent misjoinder" or "procedural misjoinder," which generally is traced to the decision of the United States Court of Appeals for the Eleventh Circuit in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir.1996). In *Tapscott* the Eleventh Circuit Court of Appeals held that the misjoinder of viable, non-fraudulent claims nonetheless may be tantamount to fraudulent joinder to defeat diversity, provided that the misjoinder is egregious. *See id.* at 1360 (finding complete diversity of citizenship where a group of plaintiffs with claims against a diverse defendant had "egregious[ly]" misjoined their claims with the claims of a group of plaintiffs against a non-diverse defendant). *See also Willingham v. State Farm Ins. Co.*, Civil Action No. 2:09–CV–59–SA–SAA, 2009 WL 2767679, at *2 (N.D.Miss. Aug. 27, 2009) (identifying *Tapscott* as the origin of the doctrine that misjoinder can be a form of fraudulent joinder to defeat diversity); *Palmer v. Davol, Inc.*, No. 07–md–1842–ML, No. 08–cv–02499–ML, 2008 WL 5377991, at *2 (D.R.I. Dec. 23, 2008) (same). Neither the Seventh Circuit Court of Appeals nor the Supreme Court of the United States has addressed the fraudulent misjoinder doctrine. However, the undersigned District Judge has had occasion to do so, dealing with the doctrine at some length—and declining to recognize it—in *Rutherford v. Merck & Co.*, 428 F.Supp.2d 842 (S.D.Ill.2006).

The Court does not believe it is necessary at this juncture to recite all of the contents of its opinion in *Rutherford* verbatim, and instead the Court will restate briefly the reasons for rejecting the fraudulent misjoinder doctrine set out in the opinion. In the *Rutherford* decision the Court pointed out that the fraudulent misjoinder doctrine is contrary to settled judicial understanding of the scope of federal diversity jurisdiction on removal. The Court observed that the jurisprudence of both the United States Supreme Court and the Seventh Circuit Court of Appeals regarding fraudulent joinder to defeat diversity jurisdiction has never suggested that a misjoinder of legally viable and non-fraudulent claims under state law is a species of fraudulent joinder, and in fact the longstanding principle in the federal courts has been that questions of joinder, particularly under state rules of civil procedure, do not implicate federal subject matter jurisdiction. *See* 428 F.Supp.2d at 851. The Court noted further that because the basis for the exercise of federal jurisdiction on removal is entirely statutory and concerns the proper balance of power as between federal courts and state courts, the limits of that jurisdiction must be narrowly defined and any enlargement thereof is to be undertaken by Congress, not the federal courts. *See id.* at 852.

Finally, the Court surveyed case law attempting to apply the fraudulent misjoinder doctrine and observed that courts have struggled with virtually every aspect of the meaning and scope of the doctrine, including: whether a mere misjoinder of parties or claims can constitute fraudulent misjoinder or if an egregious misjoinder is required; what constitutes an egregious misjoinder of parties or claims; and whether fraudulent misjoinder is to be tested using federal procedural rules governing joinder or state procedural rules governing joinder. *See Rutherford*, 428 F.Supp.2d at 852–54 & n. 2 (collecting cases).[3] The Court pointed out that the

---

**3.** In this connection, the Court noted in the *Rutherford* decision that, of the federal courts that have adopted the fraudulent misjoinder doctrine, those courts that test fraudulent

Seventh Circuit Court of Appeals has expressed a strong preference for jurisdictional rules that are simple and easy to apply, to ensure consistency of results and to avoid waste of resources through erroneous rulings on threshold issues of jurisdiction. *See id.* at 852. The Court opined further in the *Rutherford* decision that any jurisdictional principle based upon highly discretionary, fact-specific determinations about proper joinder of parties and claims in a given case is unlikely to yield consistent and predictable results. *See id.* at 855. Accordingly, the Court declined to recognize the fraudulent misjoinder doctrine, in the absence of further guidance on the matter, whether by Congress or by the Supreme Court and the Seventh Circuit Court of Appeals. *See id.*

 The removing Defendants have offered the Court no grounds to depart from its prior reasoning in *Rutherford,* and therefore the Court adheres to that reasoning. Accordingly, it appears to the Court that, just as there is no federal question jurisdiction here, so too there is no diversity jurisdiction. The Court notes that it was advised recently by counsel for the parties that they currently are working toward an agreement of some kind as to the proper jurisdiction for this case, either state or federal. It is unclear to the Court what form such an agreement might take as regards federal jurisdiction. In the removal context, of course, federal subject matter jurisdiction must exist both when a case is filed and when it is removed. *See Kanzelberger v. Kanzelberger,* 782 F.2d 774, 776–77 (7th Cir.1986) (citing 28 U.S.C. § 1441(a)); *Newsom v. Caliber Auto Transfer of St. Louis, Inc.,* Civil No. 09–954–GPM, 2010 WL 415388, at *1 (S.D.Ill. Feb. 1, 2010). Where a case has been removed in diversity jurisdiction but complete diversity of citizenship is lacking at the time the case was filed and removed, the jurisdictional defect is deemed cured if complete diversity exists at the time judgment is entered in the case. At the point when judgment is entered, the United States Supreme Court has instructed, objections to subject matter jurisdiction "run up against an overriding consideration. Once a diversity case has been tried in a federal court, with rules of decision supplied by state law under the regime of *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), considerations of finality, efficiency, and economy become overwhelming." *Caterpillar Inc. v. Lewis,* 519 U.S. 61, 75, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996). *See also Grubbs v. General Elec. Credit Corp.,* 405 U.S. 699, 700, 92 S.Ct. 1344, 31 L.Ed.2d 612 (1972) (erroneous removal need not cause destruction of a final judgment if the requirements of subject matter jurisdiction are satisfied when the judgment is entered). Here, of course, this case has only just begun, and considerations of finality have no part to play in determinations about the existence of subject matter jurisdiction in this case. Also, the Court reminds counsel for the parties that federal subject matter jurisdiction cannot be created by consent. *See United States v. Tittjung,* 235 F.3d 330, 335 (7th Cir.2000) ("No court may decide a case without subject matter jurisdiction, and neither the parties nor their lawyers may stipulate to jurisdiction or waive arguments that the court lacks jurisdiction."); *Sadat v. Mertes,* 615 F.2d 1176, 1188 (7th Cir.1980) (stating that "the limited jurisdiction of the federal courts" dictates that "jurisdiction otherwise lacking cannot be conferred by consent, collusion,

misjoinder under state procedural rules likely are upsetting the balance of federalism by needlessly inserting themselves into the judicial business of construing those rules, which is a matter of uniquely state concern. *See* 428 F.Supp.2d at 854–55 & n. 2.

laches, waiver, or estoppel."). The Court is not empowered to draw its jurisdiction according to the agreements of parties or the equities of a given case. "Napoleon at his coronation took the imperial crown out of the hands of the Pope and crowned himself. Federal judges do not have a similar prerogative. A court that does not have jurisdiction cannot assume it, however worthy the cause." *In re Brand Name Prescription Drugs Antitrust Litig.*, 248 F.3d 668, 670 (7th Cir.2001). Because the Court finds it highly questionable whether federal subject matter jurisdiction exists in this case under either 28 U.S.C. § 1331 or 28 U.S.C. § 1332, the Court will order the parties to show cause why this case should not be remanded to state court for lack of jurisdiction.

### III. CONCLUSION

The parties to this case are hereby **OR-DERED TO SHOW CAUSE** why this case should not be remanded to the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois, for lack of federal subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c). The parties shall submit briefs regarding the existence of federal subject matter jurisdiction in this case not later than thirty (30) days from the date of entry of this Order; the parties' briefs should not exceed twenty (20) pages in length.

**IT IS SO ORDERED.**

### MEMORANDUM AND ORDER

#### I. INTRODUCTION

By order entered April 21, 2010, the Court directed the parties to this case, which is before the Court on removal from Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois, to show cause why this case should not be remanded to state court for lack of federal subject matter jurisdiction. Plaintiffs, who claim to have suffered personal injuries as a result of using Levaquin, a prescription medication manufactured and distributed by Defendants, now have filed a motion for remand of this case to state court (Doc. 11). Defendants have filed a brief in response to the April 21 order. In the April 21 order the Court outlined the nature of the claims in this case and the procedural history of the case and set out in detail the reasons that the Court does not believe that federal jurisdiction exists in this case pursuant to either 28 U.S.C. § 1331, so-called "federal question" jurisdiction, or 28 U.S.C. § 1332, jurisdiction based upon diversity of citizenship. *See Baker v. Johnson & Johnson,* Civil No. 10–283–GPM, 2010 WL 1802171 (S.D.Ill. Apr. 21, 2010). The Court sees no reason to repeat that recitation here. Accordingly, in this Order, in which the Court grants Plaintiffs' motion for remand of this case to state court, the Court will merely address certain points raised by Defendants in their response to the April 21 order to show cause.

### II. ANALYSIS

#### A. Legal Standard

As an initial matter, the Court notes the standard under which it must evaluate Plaintiffs' motion for remand. Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Defendants in this case, as the proponents of federal subject matter jurisdiction, have the burden of establishing such jurisdiction. *See Lyerla v. Amco Ins. Co.,* 461 F.Supp.2d 834, 835 (S.D.Ill.2006) (citing *Meridian Sec. Ins. Co. v. Sadowski,*

441 F.3d 536, 540 (7th Cir.2006)); *Brooks v. Merck & Co.*, 443 F.Supp.2d 994, 998 (S.D.Ill.2006). " 'Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum.' Put another way, there is a strong presumption in favor of remand." *Asperger v. Shop Vac Corp.*, 524 F.Supp.2d 1088, 1091 (S.D.Ill.2007) (quoting *Doe v. Allied–Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)) (internal citation omitted). *See also Alexander v. SmithKline Beecham Corp.*, No. 09–1072–DRH, 2010 WL 750031, at *5 (S.D.Ill. Mar. 3, 2010) ("[D]oubts about the propriety of removal are to be resolved in favor of remand."); *Littleton v. Shelter Ins. Co.*, No. 99–912–GPM, 2000 WL 356408, at *1 (S.D.Ill. Mar. 9, 2000) ("The removal statute, 28 U.S.C. § 1441, is construed narrowly, and doubts concerning removal are resolved in favor of remand.").

## B. Federal Question Jurisdiction

■■■ The Court turns first to the matter of whether this case presents a substantial question of federal law for purposes of removal pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1441(c) by virtue of Plaintiffs' assertion of a claim of negligence per se based upon alleged violations of a federal regulation by Defendants. As the Court discussed in its April 21 order, a case in which a breach of a duty created by federal law is merely an element of a claim arising under state law is not removable to federal court as an action "arising under" federal law within the meaning of Section 1331. *See Baker*, 2010 WL 1802171, at *2

(quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006) ("[I]t takes more than a federal element to open the 'arising under' door[.]") (internal citation omitted). *See also Bennett v. Southwest Airlines Co.*, 484 F.3d 907, 912 (7th Cir.2007) (quoting 28 U.S.C. § 1331) ("That some standards of care used in tort litigation come from federal law does not make the tort claim one 'arising under' federal law."); *Fuller v. BNSF Ry. Co.*, 472 F.Supp.2d 1088, 1094–96 (S.D.Ill.2007) (a claim of negligence per se based on a violation of a federal regulation governing railroad safety did not present a substantial federal question for purposes of removal). The Court remains persuaded that this case arises under state law, not federal law.[1]

■■■ The gist of Defendants' response to the Court's April 21 order is chiefly that in the order the Court gave no weight to *In re Zyprexa Products Liability Litigation*, 375 F.Supp.2d 170 (E.D.N.Y.2005). This is true, but it also is irrelevant. The opinion of a sister federal trial court is not binding on this Court. *See Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123–24 (7th Cir.1987); *Dudley v. Putnam Inv. Funds*, 472 F.Supp.2d 1102, 1105 (S.D.Ill.2007). Moreover, the Court finds *Zyprexa* unpersuasive and at odds with decisions of the United States Court of Appeals for the Seventh Circuit such as *Bennett*, which, unlike *Zyprexa*, the Court is required to follow. *See United States v.*

---

**1.** Also, the Court notes in passing that, even were it the case that Plaintiffs' claim for negligence per se arises under federal law, and it does not, it likely would be an abuse of the Court's discretion not to remand to state court the remainder of the case, which Defendants concede arises solely under state law. *See* 28 U.S.C. § 1441(c) (providing that, in a case removed on the basis of a separate and independent federal claim, a court "in its discretion, may remand all matters in which

State law predominates"); *Dudley v. Putnam Inv. Funds*, Civil No. 10–327–GPM, 2010 WL 1756882, at *3 n. 2 (S.D.Ill. May 3, 2010) (citing *Carl Heck Eng'rs, Inc. v. Lafourche Parish Police Jury*, 622 F.2d 133, 136 (5th Cir.1980)) ("[W]here a case is removed on the basis of a separate and independent claim arising under federal law, it is advisable to remand the non-federal portion of the case to state court[.]").

*Glaser*, 14 F.3d 1213, 1216 (7th Cir.1994); *United States v. Burke*, 781 F.2d 1234, 1239 n. 2 (7th Cir.1986). The Court also disagrees with Defendants that the meaning of a federal law is in dispute in this case; instead, what is disputed is whether Defendants conformed their behavior to a federal regulation. Finally, concerning Defendants' objection to the Court's observation in the April 21 order that suits alleging, as here, personal injuries caused by prescription drugs commonly involve allegations of breaches of duties created by regulations promulgated by the Food and Drug Administration and other federal agencies, it is astonishing to the Court that such an elementary proposition should be at all controversial. In *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005), the Court specifically noted that "[t]he violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings." *Id.* at 318, 125 S.Ct. 2363. *See also Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 812, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (observing that it squares neither with judicial economy nor the intent of Congress to conclude that a case is removable "solely because the violation of [a] federal statute is said to be a 'rebuttable presumption' or a 'proximate cause' under state law."). The Court does not have subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1331.

### C. Diversity Jurisdiction

■ The Court turns last to the matter of whether federal jurisdiction is proper pursuant to 28 U.S.C. § 1332, which grants federal courts original jurisdiction in cases in which there is complete diversity of citizenship among the parties to a case and in which an amount in excess of $75,000, exclusive of interest and costs, is in controversy. *See Baker*, 2010 WL 1802171, at

*3. It is undisputed that complete diversity of citizenship is lacking as between two of the sixty Plaintiffs in this case and at least one Defendant. Defendants urge the Court to sever the claims in this case to create complete diversity, contending that the Court, in evaluating its jurisdiction, has a duty to inquire into the propriety of the joinder of claims in this case. The Court does not agree. It is well settled that issues concerning joinder and subject matter jurisdiction are separate and distinct, such that joinder under Rule 20 of the Federal Rules of Civil Procedure has no bearing on the existence of federal jurisdiction and the rules governing joinder cannot be employed, as Defendants contend, to enlarge the scope of such jurisdiction. "[T]he federal courts traditionally have held that matters of state civil procedure, including . . . joinder of parties and claims, have no bearing on the existence or nonexistence of federal subject matter jurisdiction in a given case. . . . The lower federal courts likewise traditionally have recognized that '[t]he question of jurisdiction cannot be determined by the rules of joinder.'" *Rutherford v. Merck & Co.*, 428 F.Supp.2d 842, 851 (S.D.Ill.2006) (quoting *Smith v. Abbate*, 201 F.Supp. 105, 113 (S.D.N.Y.1961)). *See also Bavone v. Eli Lilly & Co.*, Civil No. 06–153–GPM, 2006 WL 1096280, at *3 (S.D.Ill. Apr. 25, 2006) (noting that "[n]othing in the jurisprudence of the Supreme Court of the United States . . . suggests that the joinder of non-fraudulent claims under state procedural rules is a question that implicates the subject matter jurisdiction of a federal court.").

■ While it is the case that, as masters of their complaint, plaintiffs may use Rule 21 of the Federal Rules of Civil Procedure to dismiss non-diverse parties from an action to preserve diversity jurisdiction, that rule has not been used in the reverse,

however, to dismiss plaintiffs with viable, non-fraudulent claims, over their objections, solely to permit a defendant to acquire federal jurisdiction and remove the proceeding from the state forum in which it was originally brought. In fact, the Seventh Circuit Court of Appeals has spoken very clearly to this question, stating, in relevant part:

> Even if the [non-diverse parties] were added to prevent removal, that is their privilege; plaintiffs as masters of the complaint may include (or omit) claims or parties in order to determine the forum. Neither § 1332 nor any case of which we are aware provides that defendants may discard plaintiffs in order to make controversies removable. It is enough that the claims be real, that the parties not be nominal.

*Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir.2000) (citations omitted). *See also* 13F Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3641.1 (3d ed. 1998 & Supp. 2009) ("[I]n cases in which the plaintiff attempts to defeat federal subject matter jurisdiction by the joinder of a nondiverse plaintiff, the federal courts will allow the transaction ... if that person is deemed a real party in interest[.]") (collecting cases). It is apparent from the record of this case that diversity jurisdiction existed neither when the case was filed nor when it was removed. *See Kanzelberger v. Kanzelberger*, 782 F.2d 774, 776 (7th Cir.1986) (citing 28 U.S.C. § 1441(a)) ("[T]he required diversity must exist both when the suit is filed ... and when it is removed[.]"); *Tullis v. Wal-Mart Stores, Inc.*, Civil No. 09–935–GPM, 2009 WL 3756640, at *2 (S.D.Ill. Nov. 9, 2009) (testing the issue of complete diversity of citizenship both at the time a case was filed and the time it was removed). The Court finds that complete diversity of citizenship does not exist in this case.

### III. CONCLUSION

Plaintiffs' motion for remand (Doc. 11) is **GRANTED.** Defendants' motion to sever the claims in this case (Doc. 8) is **DENIED as moot.** Pursuant to 28 U.S.C. § 1447(c), this case is **REMANDED** to the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois, for lack of federal subject matter jurisdiction.

**IT IS SO ORDERED.**